# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> MOHAMMED BELAYET HOSSAIN, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No.: 2:13-cr-00119-GMN-GWF <br><br> **ORDER** |

Before the Court is the Report and Recommendation (R&R) issued by the magistrate judge (ECF No. 55) addressing the Defendant's Motion to Dismiss (ECF No. 29). The Government filed a timely Response (ECF No. 37) to the Defendant's motion and the Defendant filed a Reply (ECF No. 38). The magistrate judge held a hearing (ECF No. 53) and took the matter under submission before issuing its written R&R. The Defendant filed a timely Objection to the R&R (ECF No. 56) and the Government filed its Response (ECF No. 58).

In its Objection to the R&R (ECF No. 56), the Defendant maintains that the Government did not adequately plead materiality of the "scheme or artifice" and that Defendant made material misrepresentations in furtherance of a fraudulent purpose. Defendant also objects that the R&R failed to address Defendant's claims that due process and the Rule of Lenity require dismissal.

## I.    STANDARD OF REVIEW

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a de novo determination of those portions of the Report to which objections are made. *Id*. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

## II. MATERIALITY

The Defendant is charged with Bank Fraud in violation of 18 U.S.C. § 1344. The elements required to be proven are as follows, (1) the defendant knowingly carried out a scheme or plan, to obtain money or property, from Wells Fargo by making false statements or promises; (2) the defendant knew that the statements or promises were false; **(3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;** (4) the defendant acted with the intent to defraud; and (5) Wells Fargo was federally insured. *See* 9th Cir. Crim. Jury Instr. 8.127 (2010).

The Defendant challenges the third element, "materiality," and claims that "the Indictment does not contain any factual allegations to support the purported capacity of the Defendant's signature to influence Wells Fargo during a foreclosure crisis in Nevada." (Def.'s Objection 3:22–24, ECF No. 56.)

The Indictment in this case specifically alleges that Defendant Hossain "did execute a scheme and artifice (a) to defraud Wells Fargo Bank, a financial institution insured by the Federal Deposit Insurance Corporation (FDIC) and (b) to obtain moneys, funds, credits, assets, securities, or other property owned by or under the control of Wells Fargo Bank, by means of materially false or fraudulent pretenses, representations, or promises." (Indictment ¶ 4, ECF No. 1.) The indictment further alleges that:

    I.    Defendant solicited MR, a business associate, and BSA, a relative, to be straw buyers for the residence.

    II.    On or about November 9, 2009, defendant Hossain and MR made the following material misrepresentations in the Short Sale Contract Addendum for the residence:

        (1.)    The short sale would be an "Arm's Length Transaction;"

    (2.) The short sale would "be between two unrelated parties" and that "[n]o party to [the] contract is a family member, business associate, or shares a business interest with the mortgagor (Sellers);

    (3.) There were no "agreements written or implied that will allow the Seller to remain in the property as renters or regain ownership of said property at any time after the execution of this Short Sell transaction:," and

    (4.) The short sale would "not constitute . . . straw buying."

III. On or about February 16, 2010, MR and BSA opened a Bank of America joint checking account in their own names for the purpose of making mortgage payments on residence after the short sale was completed.

IV. On November 7, 2011, BSA purchased the residence with the financial assistance of defendant Hossain.

(*Id.* ¶ 5.)

The court "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2003). An indictment should be (1) read as a whole, (2) read to include facts that are necessarily implied, and (3) construed according to common sense. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993). "[A]n indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of an indictment." *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (quoting *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999)). An indictment, however, need not explain all factual evidence to be proved at trial. *Blinder*, 10 F.3d at 1476 (citing *United States v. Markee*, 425 F.2d 1043, 1047 (9th Cir. 1970), *cert. denied*, 400 U.S. 847 (1970)).

There are essentially four alleged alleged false statements: (1) the sale transaction was an

Arm's Length transaction, (2) the Defendant was not related to the buyer through family or business, (3) the buyer had not agreed to allow the Defendant to continue to reside in the property after the sale, and (4) the person identified as the buyer was the actual buyer.  The Court finds that all four of these alleged statements have a natural tendency to influence or are capable of influencing a decision of a lender to part with their money because they tend to give a false impression to the investor about the identity of the actual buyer/homeowner and falsely represent to the lender the likelihood that the loan will be paid or the risk that it will not be paid.  Therefore, the Indictment sufficiently alleges a factual basis for its claim that the alleged misrepresentations were material.

The Defendant also argues that the specific statements alleged to be material misrepresentations do not further a fraudulent purpose. (Def.'s Objection 4:11–5:2, ECF No. 56.) The Defendant explains that the language he signed in the Short Sale Contract Addendum shows only that,

> (1) Mr. Hossain stated he was not related to or a business associate of Mr. Reza; (2) Mr. Azam, the Defendant's son, was not a party to the Addendum; and (3) Mr. Hossain did not have any written or implied agreements to stay on the property as a renter or to regain possession of the property.

(*Id.* at 4:15–5:2.)

The Defendant appears to be arguing that the Government must plead the materiality of the defendant's signature.  However, the Court agrees with the Government that the Defendant's fixation on his claim that it is merely his "signature" for which he is being prosecuted is perplexing. (*See* Gov.'s Resp. 2:14–22, ECF No. 58.)  "It is the materiality of the scheme or artifice that must be alleged; the materiality of a specific statement need not be pleaded." *Omer*, 395 F.3d at 1089.  Therefore, the Court finds that the factual allegations in the charging document meet the pleading requirement and the Government has sufficiently alleged the materiality of the alleged scheme or artifice.

III.     **DUE PROCESS / THE RULE OF LENITY**

The Defendant asks the Court to apply a community standard, a "non-technical standard" and points to the fact that the Nevada Legislature later codified a Homeowner's Bill of Rights. Defendant essentially claims that the Homeowners' Bill of Rights condoned the short-sale alleged in the Indictment between a homeowner and a buyer: no state law may be construed to require a sale of a home in lieu of foreclosure to be at arm's length. Nev. Rev. Stat. § 107.140. The Defendant claims the Indictment in this case is criminalizing conduct the state of Nevada no longer considers illegal.  Therefore, notions of fundamental fairness require that the rule of lenity be applied and the Indictment dismissed. (Def.'s Objection 5:20–6:11 ,ECF No. 56.)

The fraudulent nature of the scheme or artifice to defraud is measured by a non-technical standard: "Thus, schemes are condemned which are contrary to public policy or which fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of society." *Omer*, 395 F.3d at 1089.  However, as noted in the magistrate judge's Report and Recommendation, the referenced state statute, section 107.140 of the Nevada Revised Statutes, was neither enacted nor yet in effect when the transaction alleged in the Indictment is claimed to have occurred. (Report & Recommendation 4:24–27, ECF No. 55.)  In fact, the Defendant does not deny the fact that the statute was enacted and became effective four years after the Bank Fraud alleged in the Indictment.

Despite the fact that this Nevada statute may appear to prohibit home mortgage lenders to require the parties to certify that they are conducting an "arm's length" sales transaction to avoid foreclosure, the statute clearly does not condone the making of materially false statements for the purpose of obtaining funding.  First of all, the language would not be prohibited if its inclusion did not have a significant effect on the participants of the transactions.  Secondly, N.R.S. 107.140 appears to merely prohibit the lenders from requiring the "arm's length" language prior to granting approval of the loan, but the statute does not obligate the lender to approve the loan

under such circumstances.  It is possible that mortgage lenders may just choose not to provide loans under such restrictions or lenders may choose to alter the financial terms of the contract to compensate for the lack of guarantees.  Nevertheless, the statute promotes full disclosure and does not promote concealment of the truth.  Obtaining money or property by knowingly making false statements or promises which have a natural tendency to influence or are capable of influencing a financial institution to part with its money is still contrary to public policy and fails to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of society.  Finally, even if Defendant's interpretation of the state statute is correct, state and federal governments each prosecute pursuant to their own power. *United States v. Enas*, 255 F.3d 662, 666 (9th Cir. 2001).  Therefore, the magistrate judge's Report and Recommendation correctly concluded that an individual is still not permitted to knowingly misrepresent to a lender that the transaction is at arm's length when it actually is not.

   The Defendant references the Ninth Circuit's opinion in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012).  However, Defendant's reliance on *Nosal* is misplaced because unlike the anti-hacking offense in *Nosal*, which criminalizes employees who "exceed their authorized access," Bank Fraud in violation of 18 U.S.C. § 1344 is not subject to a broad interpretation which could "criminalize a broad range of day-to-day activity" or "delegate to prosecutors and juries the inherent legislative task." *Nosal*, 676 F.3d at 862 (citing *United States v. Kozminski*, 487 U.S. 931 (1988)).

   Finally, the rule of lenity is not applicable as the federal bank fraud statute was not ambiguous at the time of the alleged conduct and an individual is still not forced to speculate whether knowingly making material false statements or promises to obtain money or property is prohibited conduct. *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (citing *United States v. Santos*, 553 U.S. 507 (2008)).

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that the Report and Recommendation (ECF No. 55) addressing the Defendant's Motion to Dismiss (ECF No. 29) is **ACCEPTED** in full, to the extent that it is not inconsistent with this opinion.

**DATED** this 2nd day of September, 2014,

_____
Gloria M. Navarro, Chief Judge
United States District Court